UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONNA ROEHM,
                                      Plaintiff,

   v.                                                  5:11-CV-161
                                                            (NAM/ATB)
COMMISSIONER OF SOCIAL SECURITY,
                                      Defendant.
_____

STEVEN R. DOLSON, ESQ., for Plaintiff
CHRISTOPHER J. BRACKETT, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

     This matter was referred to me for report and recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636 (b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I. PROCEDURAL HISTORY

     Plaintiff protectively filed[1] an application for Supplemental Security Income (SSI) benefits on April 28, 2006. (Transcript (T) at 19, 274-77). In her application, plaintiff alleged disability beginning December 25, 1998. *Id.* Plaintiff's claim was

---

[1] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement has been filed with the Social Security Administration (SSA), indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. § 416.340. If a proper statement is filed, the SSA will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

denied initially, and on reconsideration. (T. 262, 266). Plaintiff requested review by an Administrative Law Judge (ALJ). (T. 252). The hearing, at which plaintiff testified, was conducted on October 1, 2008. (T. 501-525). On December 15, 2009, Judge Koennecke issued a decision, denying plaintiff SSI benefits. (T. 19-27). The ALJ's decision became the Commissioner's final decision on December 15, 2009, when the Appeals Council denied plaintiff's request for review of the ALJ's decision. (T. 7-10).

The court notes that plaintiff had a prior application for SSI benefits that was finally denied on September 10, 2004. (T. 27A-27B). The prior ALJ's decision has been made a part of this record, as have the medical records that were associated with the prior application.[2] (T. 33-40, 107-235). Plaintiff apparently did not appeal that decision to the district court. There was a discussion between plaintiff and the ALJ at the end of the October 1, 2008 hearing during which plaintiff stated that she had appealed the prior decision. (T. 523-24). Plaintiff stated that she had not filed a "new"

---

[2] Those medical records date back to 1999, when she was first evaluated for her back impairment. (*See e.g.* T. 107). In her decision, the ALJ pointed out that SSI is not payable prior to the month after the month that the application was filed. (T. 19). In this case, that month would be May 28, 2006. The ALJ also stated, however, that she considered the "complete" medical file pursuant to 20 C.F.R. § 416.912(d). (*Id.*) Because there are records from two applications in this file, the ALJ's statement was a little confusing. However, pursuant to section 416.912(d), the "complete" file refers to plaintiff's medical history "for at least the 12 months preceding the month in which you file your application." Thus, when ALJ Koennecke states that she reviewed plaintiff's "complete medical history," she is referring to the medical history that the statute says is applicable. ALJ Koennecke's decision contains only one passing reference to records pre-dating the current application. That reference is discussed below.

application, rather she was still "appealing" the old one.³ (T. 524).  However, it appears from the record that the only application at issue is the 2006 application.⁴

## II. PLAINTIFF'S CONTENTIONS

Plaintiff raises three arguments for this court's review:

(1) The ALJ erroneously gave weight to the opinion of a non-medical disability analyst. (Pl.s' Mem. at 3-5; Dkt. No. 8).

(2) The ALJ failed to properly consider the plaintiff's obesity in making her Residual Functional Capacity (RFC) determination. (Pl.s' Mem. at 5-6).

(3) The ALJ failed to properly consider the impact of plaintiff's inability to bend at the waist in determining her RFC. (Pl.s' Mem. at 6-7).

Defendant argues that the ALJ's decision is supported by substantial evidence and asks that this court affirm the decision of the Commissioner and dismiss the complaint. (Dkt. No. 10).  For the following reasons, this court agrees with the defendant and will recommend dismissal of the complaint.

## III. APPLICABLE LAW

### A. Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial

---

³ Plaintiff was not represented by counsel at her hearing.  The ALJ carefully advised plaintiff of her right to be represented and offered to adjourn the hearing. (T. 501-503).  Plaintiff told the ALJ that plaintiff attempted to contact "Legal Aid," but that she was told first, that it was too early, and second, that it was too late. (T. 501-502).  However, after the ALJ offered to adjourn the hearing, plaintiff stated she wanted to proceed on her own and did not need counsel to tell her story. (T. 503).

⁴ Although there are a substantial number of medical records from the prior application, neither party even mentions the prior application.  Thus, the only issues for this court to consider are those that have been raised in connection with the 2006 application.

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## IV.    FACTS

Plaintiff alleges disability as the result of a "back impairment," fluid retention, depression, asthma, and vision difficulties. (Pl.s' Mem. at 2). The defendant has carefully outlined the facts in this case, and the court will adopt the facts as stated in defendant's memorandum of law, with any exceptions or additions as noted in the analysis below. (*See* Def.'s Mem. at 2-8).

## V.    THE ALJ'S DECISION

Although the ALJ considered all of plaintiff's impairments in her decision, the ALJ found that plaintiff's recurrent hernias were her only "severe" impairments under the statute. (T. 21). The ALJ found that plaintiff's low back pain, asthma, obesity, depression, "vision problem," and edema were not severe within the meaning of the statute. (T. 22-24). The ALJ found that although plaintiff was receiving substantial medication and regular nerve block injections for her back pain, there was no objective medical evidence establishing a "medically determinable impairment." (T. 23-24). Thus, the ALJ also found that plaintiff's complaints of disabling pain were

not credible to the extent that they were inconsistent with the ability to perform a full range of light and sedentary work.

In determining plaintiff's RFC, the ALJ stated that she took plaintiff's obesity into consideration even though no doctor had expressed limitations specifically based on plaintiff's weight. (T. 23). The ALJ gave "evidentiary weight" to the consultative opinion of Dr. Kalyani Ganesh, who examined plaintiff in connection with both this and her previous application, coming to the same conclusion regarding her ability to perform work activities.[5] (*See* T. 24-25; *Compare* T. 380-83 (prior application) *with* T. 432-35 (current application)).

The ALJ found that plaintiff was limited to a full range of light and sedentary work, even though plaintiff did not meet her burden of showing that she had a severe back impairment. (T. 26). The ALJ stated that "[e]ven though the claimant has failed to meet her burden to establish a back impairment, limiting her to light (and therefore also sedentary) exertion would take her complaints into consideration." (*Id.*) The ALJ also stated that "[t]his very limited assessment of residual functional capacity also takes into consideration her obesity in spite of the fact that no medical professional has limited her in that regard." (*Id.*) The ALJ refused to consider a limitation in plaintiff's exposure to "respiratory irritants" because "it is absurd to limit an individual who is voluntarily inhaling cigarette smoke on a regular basis from respiratory irritants." (*Id.*)

At step four of the disability analysis, the ALJ found that plaintiff could not go

---

[5] After the hearing, the ALJ specifically attempted to contact Dr. Parakulam Thomas and Nurse Practitioner (NP) Chris Barber, requesting further information regarding plaintiff's physical abilities, but received no assessments. (T. 19).

7

back to her previous employment. Based on these findings, the ALJ used the Medical Vocational Guidelines ("the Grids") to conclude that plaintiff was not disabled.[6]

## VI.   RESIDUAL FUNCTIONAL CAPACITY (RFC)

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120, 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling (SSR) 96-8p, 1996 SSR LEXIS 5 at *19,

---

[6] The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996). *See also* 20 C.F.R. § 404.1567(a). Each exertional category of work has its own Grid. The Grid for each exertional category then takes into account the plaintiff's age, education, and previous work experience. *Id.* Based on these factors, the Grids help the ALJ determine whether plaintiff can engage in any other substantial work that exists in the national economy. *Id.*

1996 WL 374184, at *7).

In this case, plaintiff argues that the ALJ improperly gave weight to the RFC determination of a non-physician, disability analyst because the analyst did not qualify as an "acceptable medical source" under the regulations. On July 19, 2006, one of SSA's non-physician, disability analysts prepared an RFC for plaintiff in which the analyst concludes that plaintiff can perform all the functions necessary for light work. (T. 447-52). Plaintiff is correct in arguing that a non-physician, disability analyst is not an "acceptable medical source" under the regulations. *See* 20 C.F.R. §§ 404.1513 (a); 416.913(a). *See also Napierala v. Astrue*, No. 07-CV-706, 2009 WL 4892319, at *6 (W.D.N.Y. Dec. 11, 2009) (citations omitted).

However, plaintiff misreads the ALJ's opinion in this case. The ALJ relied not only on the disability analyst's report, but also cites Dr. Ganesh's June 28, 2006 report as a basis for her RFC finding. (T. 24). ALJ Koennecke cites the portion of Dr. Ganesh's report, finding that plaintiff was "not grossly limited sitting, standing or walking," but had a "moderate limitation lifting, carrying pushing and pulling due to her history of recurrent hernia and lower back pain." (T. 24). The ALJ also noted that RFC assessments associated with plaintiff's prior application were consistent with an ability to perform light work. (T. 25). The ALJ then stated that in the absence of statements of physical limitations made by plaintiff's treating sources, the ALJ gave "evidentiary weight to the assessments made for the Administration by its analysts *and consultants*." (T. 26) (emphasis added).

The ALJ attempted to obtain further opinions of plaintiff's RFC from her

treating sources, but was unsuccessful in doing so.[7] (*See* T. 19, 475-83, 484-98). The ALJ also noted that there were RFC assessments from plaintiff's prior application that were consistent with the ability to perform light work. (T. 25). The court notes that Dr. Ganesh also examined plaintiff in connection with her prior application and made the same findings regarding her ability to perform physical functions. (*Compare* T. 432-36 (Dr. Ganesh Report of June 28, 2006) *with* T. 380-84 (Dr. Ganesh Report of Sept. 27, 2005)). In *Napierala v. Astrue*, the court found that even if the ALJ erred in giving significant weight to a non-medical analyst's report, the decision would be affirmed if substantial evidence in the record existed to support the ALJ's determination of plaintiff's RFC. 2009 WL 4892319 at *6.

In this case, plaintiff had a treating nurse practitioner, who did not respond to the ALJ's request for an opinion regarding plaintiff's ability to perform work-related functions. Dr. Ganesh's stated that although plaintiff was moderately restricted in lifting and carrying due to her back pain and recurrent hernia, she was not limited in sitting, standing, or walking. No limitation in standing, sitting, and walking is consistent with the disability analyst's finding that plaintiff could sit, stand, and/or walk approximately six hours during the day. A moderate limitation in lifting and carrying is consistent with the ability to occasionally lift 20 pounds and frequently lift or carry ten pounds as found by the disability analyst. Dr. Ganesh's opinion was the same from both his 2005 and 2006 reports and, together with the specific RFC stated

---

[7] In one case, the ALJ obtained further medical records, but no assessment of plaintiff's RFC based on those records. (T. 484-98).

by the disability analyst, is consistent with an ability to perform light work. Thus, even if the ALJ erred in "giving evidentiary weight" to the non-medical analyst, there is sufficient *medical* source evidence supporting the ALJ's RFC evaluation.

The ALJ considered all of plaintiff's impairments in making his determination. The ALJ reviewed all of limitations alleged by plaintiff due to her obesity, alleged edema,[8] depression, asthma, and "vision difficulties." (T. 23). Plaintiff does not appear to contest any of the findings regarding edema, depression, asthma or "vision difficulties," but does argue that the ALJ did not properly consider plaintiff's obesity and her inability to bend at the waist in making the RFC determination. As the ALJ pointed out, no doctor ever made a determination that her obesity caused specific limitations that were not included in a general assessment of plaintiff's condition. The doctors noted her weight, and Dr. Ganesh clearly took that into consideration when determining plaintiff's ability to perform work-related functions. The ALJ, thus, properly considered plaintiff's obesity in making her determination.

Although plaintiff argues that the record is filled with documentation showing her "limited" ability to bend at the waist, no doctor has determined what additional effect this limitation would have on plaintiff's ability to perform work-related functions.[9] The court notes that plaintiff cites a medical evaluation by Dr. Gundala

---

[8] As the ALJ noted, there was no record of chronic edema in plaintiff's ankles. (*See e.g.* T. 494 (May 5, 2006- treating NP); T. 491 (May 25, 2007- treating NP); T. 485-86 (Sept. 29, 2008- treating NP); T. 434 (June 28, 2006- Dr. Ganesh)).

[9] Although plaintiff does not specifically make this argument, she could be arguing that the limited ability to bend at the waist would further restrict the full range of any exertional category of work that she could perform. If that were the case, and depending on the extent of the restriction on the type of work plaintiff could perform, the ALJ might be required to call a vocational expert to

11

Reddy, in which the doctor states all spine movements were painful, particularly flexion and extension. (T. 108). This doctor's report is dated September 27, 1999, and was considered in conjunction with plaintiff's prior application, the denial of which she did not appeal. In any event, the Dr. Reddy also noted that plaintiff had two Magnetic Resonance Image (MRI) tests performed that were negative for abnormalities of both the thoracic and lumbar spine. (T. 108). Because of the negative MRI tests, the doctor noted that she was unable to make any "diagnostic conclusions." (T. 108).

Dr. Reddy's report was also written prior to plaintiff's treatment, which consisted of substantial pain medications and nerve blocks. Plaintiff also cites Dr. Shayevitz's consultative report, dated in 2003 in which he found that plaintiff was "markedly impaired" in her ability to sit, stand, walk, lift, carry, push, pull, and bend forward. (T. 192). Once again, this report was considered in conjunction with plaintiff's prior application, and there are other reports in the record indicating that plaintiff was not so limited because her pain was being managed by her medication and her nerve blocks.[10] As stated above. plaintiff did not appeal the prior decision, denying benefits. Because plaintiff failed to appeal that decision, the ALJ was not required to reconsider the prior ALJ's findings in connection with plaintiff's prior

---

testify to alternative jobs at step five of the evaluation process. *See Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986). The ALJ in plaintiff's prior application did consult a vocational expert at the hearing and still determined that plaintiff was not disabled. (T. 38-39).

[10] In any event, evidentiary conflicts in the record are for the ALJ to resolve. *Ventimiglia v. Astrue*, No. 10 Civ. 3148, 2011 WL 4483654, at *5 (S.D.N.Y. Sept. 28, 2011) (citing *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983)).

application. *See Britton v. Astrue*, No. 5:06-CV-639, 2011 WL 2267587, at *11 (N.D.N.Y. June 7, 2011) (discussing administrative res judicata); *Malave v. Sullivan*, 777 F. Supp. 247, 251 (S.D.N.Y. 1991) (same); *Amato v. Bowen*, 739 F. Supp. 108, 111 (E.D.N.Y. 1990) (same).

There is no argument in this case that the ALJ constructively reopened the prior decision or denied plaintiff due process in failing to reopen the prior determination. *See Bessette v. Commissioner of Soc. Sec.*, No. 09-CV-735, 2010 WL 5677184, at *5 (N.D.N.Y. Dec. 14, 2010) (if the Commissioner reviews the entire record and renders a decision on the merits, the earlier decision will be deemed to have been reopened and the claim would be subject to judicial review) (citing *Byam v. Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003)). In this case, the ALJ did briefly mention some evidence contained in the prior medical records, but merely noted parenthetically, that the records in conjunction with the prior application also contained evidence supporting a light-work RFC.[11] (T. 25). The ALJ did not review all the evidence from the prior application.[12]

---

[11] This is true even though the previous ALJ found that plaintiff was limited to a reduced range of sedentary work.

[12] Although it is not necessary to its decision, this court would note that the first ALJ (Barbara Gibbs) limited plaintiff to sedentary work, with a sit/stand option as the result of her impairments. ALJ Gibbs also stated, however, that the medical evidence of a back impairment was "equivocal at best" and cited Dr. Willoughby's statement that the two 1999 MRI tests were "negative for both the lumbar and thoracic spine." (T. 35). ALJ Gibbs then found that "construing all doubt in favor of the claimant, I find that she suffers from sacroiliac joint disease with lumbar radiculopathy." ALJ Gibbs also called a vocational expert as a witness at the hearing, who testified that there was other work in the national economy that plaintiff could perform. (T. 37-39). Based upon the Grid and the testimony of the vocational expert, ALJ Gibbs found plaintiff was not disabled. Thus, even if plaintiff were relegated to less than a full range of sedentary work, she would not be disabled.

Dr. Ganesh examined plaintiff in conjunction with her earlier application and in conjunction with the current application. Both of his reports stated that plaintiff's lumbar flexion was limited to 45 degrees, extension was "abnormal," lateral flexion was limited to 10 degrees, and rotation was limited to 5 degrees, yet also concluded that plaintiff had no gross limitations to sitting, standing, or walking, and only a moderate limitation in pushing, pulling, lifting, and carrying. (T. 382-83 (2005 report); 434-35 (2006 report)).

While there are certainly reports indicating that plaintiff is limited in her mobility and suffers from pain,[13] it is the province of the ALJ to make the RFC determination,[14] and there are reports, such as those written by Dr. Ganesh, that support the ALJ's determination of RFC. The ALJ also attempted to obtain further information regarding plaintiff's limitations from her treating physicians, but was

---

[13] The record contains reports authored in 2007 and 2008 by plaintiff's treating Nurse Practitioner, Chris Barber. These reports indicate that plaintiff has occasional bad days and occasional good days. The good days occur after having the nerve block injections. (*See* T. 461). On March 17, 2008, NP Barber stated that [f]ollowing the block she could be extremely active . . . [i]n between, she just continues to try to stay as active as she can." (T. 461). In the same report, he also stated that "the medications are controlling the rest of her pain on the other days that she does not get the relief from the injections and it allows her to her to complete some of her activities of daily living . . . ." (*Id.*) On July 28, 2008, NP Barber stated that the plaintiff's lumbar range of motion "did not appear to be adversely affected by pain . . . ." (T. 457). On October 1, 2008, plaintiff was again examined by NP Barber and told him/her that plaintiff was depressed because she kept getting denied Social Security benefits. (T. 455). On that date, NP Barber noted that plaintiff appeared to be in severe pain and that plaintiff's lumbar range of motion was adversely affected by pain. (*Id.*)

[14] *See* 20 C.F.R. § 416.946(c) (at the hearing level, it is the ALJ's responsibility to assess RFC); *Aldrich v. Astrue*, No. 5:08-CV-402, 2009 WL 3165726, at *9 (N.D.N.Y. Sept. 28, 2009) (the determination of a claimant's RFC is based on all relevant medical evidence and is reserved solely for the ALJ).

14

unsuccessful in doing so.[15]  While it has been held that the ALJ may not simply rely on a report that assesses work-related functions vaguely,[16] the ALJ in this case also noted that the disability analyst's specific RFC determination was consistent with Dr. Ganesh's findings. (T. 25-26). Thus, the ALJ properly relied on *both* a medical report as well as a non-medical RFC evaluation in determining that plaintiff could perform light work, notwithstanding the combination of her severe and non-severe conditions.

## VII. PAIN AND CREDIBILITY

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, whether there is a medically determinable impairment, resulting in anatomical, physiological, or psychological abnormalities,

---

[15] Plaintiff was *pro se* at the ALJ's hearing, notwithstanding the ALJ's insistence that she would adjourn the hearing if plaintiff wished to obtain representation. (T. 501-503).  The ALJ has a duty to properly develop the record whether the plaintiff is represented or not. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

[16] *Bennett v. Astrue*, 6:07-CV-780, 2010 WL 3909530, *7-8 (N.D.N.Y. Sept. 30, 2010).

that could reasonably be expected to produce the pain or other symptoms alleged. 20 C.F.R. § 416.929 (a) & (b).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.  *Id.* § 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 416.929(c)(3).

Although plaintiff's counsel did not make a separate argument regarding the ALJ's rejection of plaintiff's subjective complaints of limitations, the court would point out that the ALJ did engage in the above evaluation when she determined that plaintiff's only medically determinable impairments were her recurrent hernias. (T. 24-26).  The ALJ specifically stated that "the claimant has failed to meet her burden to establish a back impairment . . . ." (T. 26).

The ALJ found that plaintiff's medically determinable impairment[17] (i.e. hernia) could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of this impairment were not credible to the extent that they were inconsistent with the ability to do light work. (T. 25-26). The ALJ then gave the plaintiff the benefit of the doubt regarding the alleged back impairment and stated that limiting plaintiff to "light (and therefore also sedentary) exertion would take her complaints into consideration." *Id.*

The record supports the ALJ's finding. Plaintiff had two MRIs done in 1999, which showed no back impairment, and two sets of x-rays showed no bony deformity. On September 27, 2005, x-rays showed mild "lipping," but no disc space narrowing. (T. 384). On June 28, 2006, plaintiff's x-ray report was identical, stating that the "vertebral body heights and disc spaces [are] maintained. No spondylolysthesis or spondylolysis is present. There is no osteophytosis. The lordotic curvature is preserved. . . . No bony or disc space pathology is identified." (T. 436).

The ALJ did note that plaintiff was getting substantial treatment for whatever back condition she had, notwithstanding the lack of objective evidence of any abnormality, and that the treatment was controlling the pain. (T. 23-24). The ALJ then stated that although there was an "appearance" of severity based on the nature of the measures taken to deal with the pain, the record was insufficient to permit the ALJ to find that plaintiff had a severe back impairment. (T. 24). This determination is

---

[17] While Dr. Ganesh did state that plaintiff had degenerative disc disease as a diagnosis, he did not limit the plaintiff to less than light work as a result of all her impairments. (T. 435).

17

supported by substantial evidence in the record. The extent of the medication[18] and the treatment is only one of the factors listed above, and that analysis takes place after a medically determinable impairment is found. Because plaintiff had no medically determinable back impairment, the ALJ's rejection of the extent of plaintiff's complaints of pain is supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's determination be **AFFIRMED**, and the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: November 28, 2011

*[signature: Andrew T. Baxter]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[18] Plaintiff takes quite an array of medications, including at various times, Morphine, Oxycodone, MS Contin, Baclofen, Mobic, Lidoderm patches, Topamax, Amytriptyline, Prozac, Wellbutrin and Elavil for her depression. (*See e.g.* T. 432-33, 455).